UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARKEL INSURANCE COMPANY,<br><br>                    Plaintiff(s),<br>        v.<br><br>SECRET HARBOR,<br><br>                    Defendant(s). | CASE NO. C23-0158-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFERRING RULING ON DEFENDANT'S MOTION TO STAY |

This action is an insurance coverage dispute related to claims brought against Defendant Secret Harbor in state court for negligence related to its employees' alleged physical and/or sexual abuse of the state-court plaintiffs. Dkt. No. 1. Plaintiff Markel Insurance Company, which issued several insurance policies to Secret Harbor in the years after the alleged abuse took place, filed this action seeking declaratory relief regarding its obligations to indemnify and defend Secret Harbor in the underlying state lawsuits.[1] *Id*.

Markel filed a motion requesting that the Court rule as a matter of law that Markel has no duty to indemnify Secret Harbor under any of the policies at issue because the state-court plaintiffs' injuries—using state plaintiff J.H. as an exemplar—occurred before any policy period and/or arose

---

[1] Upon the parties' agreement, the Court previously granted Markel's previous motion for summary judgment to the extent it argued that no coverage was available under the 2015–18 policies for the claims asserted against Secret Harbor in the underlying lawsuits. *See* Dkt. No. 38 at 7. Markel's motion addresses only the policies effective June 30, 2010, to June 30, 2014. Dkt. No. 51 at 12.

ORDER - 1

at a location not covered by at least some of the Markel policies. Dkt. No. 51.[2] Secret Harbor opposes Markel's motion and cross-moved for a stay of this case, to occur after the Court rules on the legal questions presented in Markel's motion and to continue until all of the underlying state-court lawsuits are resolved, whether by settlement, ruling on a dispositive motion, or trial. Dkt. No. 61.

For the following reasons, the Court finds Markel has met its burden to show that coverage is not available for J.H.'s claims under the 2010, 2011, and 2012 policies, but not with respect to the 2013 policy. Thus, the Court will grant Markel's motion for summary judgment on its duty to indemnify with respect to the 2010, 2011 and 2012 policies, and the Court will deny the motion with respect to the 2013 policy. Because it is not clear to the Court how this ruling may impact the parties' respective positions on Secret Harbor's motion to stay (Dkt. No. 61), as well as on the pending motion to compel (Dkt. No. 56), the Court directs the parties to meet and confer on these issues. The Court will defer ruling on those motions until after hearing from the parties at a status conference.

## I. BACKGROUND

Defendant Secret Harbor is a non-profit organization and provider of therapeutic treatment for youth in crisis in the Skagit Valley region. Dkt. No. 21 ¶ 2. Until it closed in 2008, Secret Harbor operated a residential and educational facility on Cypress Island. *Id*. ¶ 4. Secret Harbor contracted with Washington state to place individuals in need at the facility. *Id*. ¶ 5. Since 2018, at least two dozen individuals have sued or brought claims against Secret Harbor related to alleged physical or sexual abuse at Cypress Island ("underlying lawsuits"), and at least one of them has since settled. *See* Dkt. No. 1 ¶ 14, Dkt. No. 54-6.

---

[2] The Court refers to the parties' briefing by the CM/ECF page numbers.

ORDER - 2

In one of the underlying lawsuits that has settled, plaintiff J.H. alleged that he was abused at Secret Harbor's Cypress Island facility in 1996. Dkt. No. 54-3. Markel defended Secret Harbor in that action and contributed $400,000 to J.H.'s settlement fund, under a reservation of rights. Dkt. No. 54-6. Markel expressly reserved its right to seek reimbursement of its payment if this Court determines that Markel had no duty to indemnify Secret Harbor in the J.H. action. *See id*.

Markel now requests that, using the facts of J.H.'s case as an exemplar, the Court reexamine the issues presented in the prior order denying Markel's motion for partial summary judgment and find that as a matter of law, Markel has no duty to indemnify as to *any* of the underlying lawsuits for two reasons: (1) because it is undisputed that J.H. was abused (and therefore injured) in 1996—long before any of the time periods covered by any of the Markel policies still at issue, and (2) because the sexual abuse occurred at the Cypress Island facility, which is not listed as a covered premises for purposes of the 2010, 2011, or 2012 Markel policies. Dkt. No. 51 at 6–7. The Court heard oral argument on this motion and, for the following reasons, agrees that the landscape has changed since the settlement of the J.H. matter and the Court will grant in part and deny in part Markel's motion, but only with respect to the J.H. matter.

## II.  ANALYSIS

### A.  Legal Standards

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

In Washington, insurance policies are "construed as contracts, and interpretation is a matter of law." *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1142 (Wash. 1984). If a policy's language "is clear and unambiguous, [courts] must enforce it as written; [they] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).

"An insurer's duty to indemnify its insured arises only where the injured party ultimately prevails on facts which fall within the policy coverage." *Safeco Ins. Co. of Am. v. McGrath*, 708 P.2d 657, 659 (Wash. Ct. App. 1985).

> Determining whether coverage exists under a [comprehensive general liability] policy is a two-step process. The burden first falls on the insured to show its loss is within the scope of the policy's insured losses. If such a showing has been made, the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language.

*Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (citing *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003–04 (Wash. 1992)). In Washington, an endorsement supersedes the terms of the original policy and becomes part of the original insurance contract. *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 600 (Wash. 2016) ("An endorsement becomes a part of the insurance contract even if the result is a new and different contract." (quoting *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 760 P.2d 337, 343 (Wash. 1988))).

//

//

**B.    Summary of Applicable Policy Language and Markel's Arguments**

Secret Harbor purchased a series of one-year commercial general liability and umbrella liability policies from Markel that provided coverage from June 30, 2010, through June 30, 2019.[3] *See* Dkt. Nos. 52-2, 52-3, 52-4, 52-5, 52-6, 52-7, 52-8, 52-9, 52-10, 52-11, 52-12, 52-13, 52-14, 52-15, 52-16, 52-17, 52-18.

Each commercial general liability policy at issue in this motion contains an endorsement that provides "abuse or molestation and employee defense coverage," and each umbrella policy incorporates that same coverage as well. Dkt. No. 52-2 at 153–54, Dkt. No. 52-3 at 13, Dkt. No. 52-4 at 165–66, Dkt. No. 52-5 at 11, Dkt. No. 52-6 at 166–67, Dkt. No. 52-7 at 11, Dkt. No. 52-8 at 152–53, Dkt. No. 52-9 at 9.  The endorsement states that Markel

> will pay those sums the insured becomes legally obligated to pay as damages that result in 'bodily injury' … because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom any insured is or ever was legally responsible.

Dkt. No. 52-2 at 153–54, Dkt. No. 52-4 at 165–66, Dkt. No. 52-6 at 166–67, Dkt. No. 52-8 at 152–53.  The endorsement provides that "[t]he term 'bodily injury' includes mental anguish or emotional distress." *Id*.  All of the policies at issue provide that the insurance applies to bodily injuries that "occur[] during the policy period."  Dkt. No. 52-2 at 86, Dkt. No. 52-3 at 15, Dkt. No. 52-4 at 97, Dkt. No. 52-5 at 14, Dkt. No. 52-6 at 102, Dkt. No. 52-7 at 14, Dkt. No. 52-8 at 90, Dkt. No. 52-9 at 11.

The 2010, 2011, and 2012 policies also include a Designated Premises Endorsement ("DPE") providing that coverage extends only to bodily injury "arising out of" "the ownership, maintenance, or use" of certain premises listed in the endorsement and the "operations necessary

---

[3] Each policy year starts on June 30.  *See, e.g.*, Dkt. No. 17 at 7–8.  This order refers to each policy by the year when it first takes effect.

ORDER - 5

or incidental to those premises[.]" Dkt. No. 52-2 at 104–12, Dkt. No. 52-3 at 44, Dkt. No. 52-4 at 119–27, Dkt. No. 52-5 at 42, Dkt. No. 52-6 at 120–28, Dkt. No. 52-7 at 42.

Markel's motion argues that coverage is not available for J.H.'s claims and the remainder of the underlying lawsuits raising similar claims based on two provisions of the policies, and the Court will address each argument in turn.[4]

**C.     The Designated Premises Endorsements Bar Any Coverage Available Under the 2010, 2011, and 2012 Policies.**

The Cypress Island school, which closed in 2008, is not listed in the schedule associated with the DPEs. *See* Dkt. No. 52-2 at 104–12, Dkt. No. 52-4 at 119–27, Dkt. No. 52-6 at 120–28. Markel argues that because J.H.'s claims arise from the ownership, maintenance, or use of a non-covered location (Cypress Island), coverage under the 2010/2011/2012 policies is not available due to the DPEs. The Court agrees, because the only reasonable reading of the DPE language compels this conclusion.

The DPE attached to the 2010, 2011, and 2012 policies modifies the terms of the original policy to restrict coverage to those bodily injuries arising from the ownership, maintenance, or use of certain scheduled premises (and offsite operations "necessary or incidental to those premises"). *See* Dkt. No. 52-2 at 104–12, Dkt. No. 52-4 at 119–27, Dkt. No. 52-6 at 120–28. The parties agree (*see* Dkt. No. 73 at 25–27) that J.H.'s bodily injuries arose from the ownership, maintenance, or use of Cypress Island, and that Cypress Island is not a designated premises in the 2010, 2011 or 2012 policies. These two undisputed facts are sufficient to allow the Court to conclude that J.H.'s claims are not covered by the 2010, 2011, or 2012 policies and that Markel therefore has no duty to indemnify Secret Harbor under those policies.

---

[4] It may be true that principles explained in this order would apply to other underlying lawsuits, but because the J.H. settlement is the only one presented in this motion, the Court's order applies only to it. *See* Order (Dkt. No. 38) (declining to issue advisory opinions on the duty to indemnify, until Secret Harbor's liability in any of the underlying lawsuits is determined).

Secret Harbor's attempts to withstand summary judgment are unavailing. Secret Harbor speculates that acts related to J.H.'s negligence-based claims could have taken place offsite, such as training or supervising decisions made in an offsite central administrative office that is listed as a covered premises in the Markel policies, and that there may be discoverable evidence of such offsite activity. Dkt. No. 61 at 32. Even assuming this speculation is true and could be supported by evidence, it would not undercut the application of the DPEs because the parties agree that it is bodily injury that triggers coverage of the policies at issue. *See* Dkt. No. 73 at 24–25, 39–41. The bodily injuries alleged by J.H. arose out of the maintenance, ownership, or use of Cypress Island.[5] *See* Dkt. No. 54-3 (J.H.'s complaint, equating Secret Harbor with Cypress Island). Thus, because the injuries alleged by J.H. arose out of the maintenance, ownership, or use of Cypress Island, which is not a covered premises in the DPEs, there is no coverage available for J.H.'s injuries by operation of the DPEs in the 2010, 2011, or 2012 policies. *See, e.g.*, *Mid-Century Ins. Co. v. Zanco*, 456 F. Supp. 3d 1213, 1227 (E.D. Wash. 2020) (finding that because there are no allegations in the underlying lawsuit "that could lead to the conclusion that the condition of the dock at Defendant's home [where the insured was injured] was related to any operation or activity of the [designated premises]," the designated premises endorsement precludes coverage).

Secret Harbor also suggests that because Markel failed to put forward evidence that none of the activity giving rise to J.H.'s negligence claims took place anywhere other than Cypress Island, Markel has failed to meet its burden of proof under Rule 56. Dkt. No. 61 at 32. Secret Harbor is mistaken: Markel met its initial burden under Rule 56 to show an absence of evidence to support coverage under the 2010, 2011 and 2012 policies by virtue of the DPEs. *See Celotex*,

---

[5] In addition, as Markel emphasized at oral argument (Dkt. No. 73 at 42–43), there is a temporal disconnect between any administrative decisions impacting J.H.'s experience at Cypress Island that may have taken place at a premises covered under the Markel policies (which would have occurred before or during J.H.'s time at Cypress Island in 1996) and the inception of the policies themselves (2010–2012).

ORDER - 7

477 U.S. at 323. The burden then shifted to Secret Harbor to show that there are facts in dispute or that Markel is not otherwise entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 252. Secret Harbor has not done so, and Markel has established that it is entitled to summary judgment as to coverage for bodily injury arising from J.H.'s alleged abuse at Cypress Island. The only policy unaffected by this disposition is the 2013 policy, which will be addressed in the next section.

**D.    Markel is Not Entitled to Judgment as a Matter of Law as to the 2013 Policy.**

As noted above, the 2013 policy indicates that the insurance covers "bodily injury" that "occurs during the policy period[.]" Dkt. No. 52-8 at 90. Bodily injury is defined to mean, in relevant part, "[b]odily injury, sickness or disease sustained by a person, and also includes mental anguish or emotional distress provided such mental anguish or emotional distress results from any of these[.]" *Id*. at 141.

Markel argues that J.H.'s claims are not covered by the policy because only bodily injuries that "occur" during the policy period are covered: although J.H. alleged that he continued to suffer mental injuries in the years following his 1996 abuse, Markel contends that those injuries "occurred" in 1996 because they first came into existence at that time. Dkt. No. 73 at 5–6, 38. According to Markel, the Court should interpret "occur" to mean "first come into existence," and because J.H.'s injuries first came into existence when he was abused in 1996—long before the policy period at issue—injuries suffered in subsequent years are not covered. *See, e.g.*, Dkt. No. 51 at 24, Dkt. No. 73 at 38.

Thus, the resolution of this argument turns on the definition of the word "occurs."[6] The Markel policies do not define "occurs," and the Court therefore turns to a standard dictionary[7] to determine the "plain, ordinary, and popular" meaning of that word. *Kitsap County v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990)). Most of the definitions of "occur" relate to existence generally, rather than the beginning of existence. *See Occur*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1561 (1993) ("1: to be present or met with: EXIST … 2: to present itself : come to pass : take place : HAPPEN … 3: to come to mind : suggest itself"). As Secret Harbor's counsel noted at oral argument, "occurs" can also be used to describe the timing of an event that spans years, such that if a person is asked when the Civil War occurred, they would answer with a span of years rather than the year the war started. Dkt. No. 73 at 20. To the extent that Markel attempts to equate "occurs" with "incepts" or "first occurs," that meaning may be reasonable in some contexts, but it is not the only reasonable reading of that word.

If—interpreting "occurs" to mean "exists"—bodily injuries that *exist* during the policy period are covered, then J.H.'s injuries are covered, as Markel conceded at oral argument. *See* Dkt. No. 73 at 15. And Secret Harbor has put forward evidence that J.H.'s injuries did exist during the policy period: J.H. testified in a 2024 deposition that he experienced injuries as a result of his 1996 abuse in every year since the abuse. *See* Dkt. No. 62-2 at 4–6. Because the remaining Markel policy at issue does not plainly require that the injuries *first* existed during a policy period in order

---

[6] It does not turn on general abstract propositions such as whether the continuous trigger rule is followed in Washington, or whether injuries caused by sexual abuse are similar to property damage, broken limbs, or asbestos exposure. *See, e.g.*, Dkt. No. 51 at 16–22. The questions presented in Markel's motion can be resolved by construing the language in the policies themselves.

[7] Webster's Third New International Dictionary is "a tried-and-true authority in insurance contract disputes[.]" *Fidelity Sec. Life Ins. Co. v. Cantu*, __ F.Supp.3d __, 2024 WL 4349549, at *2 (W.D. Wash. Sep. 30, 2024) (citing *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 26 P.3d 910, 915 (Wash. 2001)).

ORDER - 9

to be covered,[8] the Court rejects Markel's request for judgment as a matter of law that J.H.'s injuries are not covered by the policy still at issue in Markel's motion (namely, the 2013 policy in effect June 30, 2013, through June 30, 2014).

The parties are directed to meet and confer to discuss whether this resolution impacts the pending motions to compel and stay. Dkt. Nos. 56, 57, 61. The parties shall file a joint status report and the Court will thereafter set a conference to discuss the next steps for this case.

### III.  CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for summary judgment as it pertains to the J.H. matter, as explained herein. Dkt. No. 51. The Court DEFERS ruling on the other motions pending in this case (Dkt. Nos. 56, 57, 61) until after the parties have filed a joint status report, no later than March 21, 2025, addressing the need for judicial resolution of those issues in light of the Court's ruling on Plaintiff's summary judgment motion. The Clerk is directed to TERMINATE the deferred motions (Dkt. Nos. 56, 57, 61), subject to reactivation as needed based on further input from the parties.

Dated this 7th day of March, 2025.

Kymberly K. Evanson
United States District Judge

---

[8] As explained in a prior order, the 2015–18 policies require that injuries must first occur during the policy period in order to be covered. *See* Dkt. No. 38 at 7. That language is not present in the policies addressed in this order, and demonstrates that Markel could have drafted the policies at issue here to achieve the result it seeks via this motion.
  Markel attached to its motion an endorsement applicable to the 2014 policy that appears to modify the "occurs" language also found in the 2010, 2011, 2012, and 2013 policies to bring the 2014 policy in line with the "first occurs" language found in the later policies addressed in the Court's prior order (Dkt. No. 38). *See* Dkt. No. 52-18 at 20. This endorsement is not discussed in Markel's motion, which, as indicated earlier, explicitly addresses only the policies in effect from June 30, 2010, through June 30, 2014. *See* Dkt. No. 51 at 12. The parties may wish to address in their joint status report whether the 2014 policy occupies a liminal space between the policies discussed in this order and the policies discussed in the Court's prior order (Dkt. No. 38), or whether the Court's reasoning in this order and/or the prior order should be applied to the 2014 policy as well.