UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARKEL INSURANCE COMPANY,<br><br>Plaintiff(s),<br>v.<br><br>SECRET HARBOR,<br><br>Defendant(s). | CASE NO. C23-0158-KKE<br><br>ORDER GRANTING MOTION FOR LEAVE TO AMEND THE COMPLAINT |

After the Court granted in part and denied in part Markel's motion for summary judgment, Markel moved for leave to amend its complaint to, among other things, allege facts describing Secret Harbor's liquidation proceeding and the Court's summary judgment ruling, assert new coverage positions not referenced in the original complaint or in reservation-of-rights letters sent to Secret Harbor, and bring new causes of action. Dkt. No. 124.

Because leave to amend should be liberally granted, and neither opposing party has shown that prejudice would result, the Court will grant Markel's motion.

## I. BACKGROUND

Secret Harbor was a non-profit corporation and provider of therapeutic treatment for youth in crisis in the Skagit Valley region. Dkt. No. 21 ¶ 2. Secret Harbor operated a residential and educational school on Cypress Island until 2008. Dkt. No. 1 ¶ 9. Secret Harbor contracted with

Washington state ("the State") to place wards of the State at the Cypress Island school, often as an alternative to incarceration. *Id.* ¶ 10.

Secret Harbor purchased a series of one-year commercial general liability and umbrella liability policies ("the policies") from Plaintiff Markel Insurance Company ("Markel"), which provided coverage from June 30, 2010, through June 30, 2019. Dkt. No. 1 ¶ 22. Since 2018, more than two dozen individuals have sued or brought claims against Secret Harbor (and, in all but one lawsuit, the State as well) related to alleged physical or sexual abuse at the Cypress Island school prior to its closing in 2008 ("underlying lawsuits"). Dkt. No. 1 ¶ 14; Dkt. No. 21 ¶¶ 6–9.

Markel filed suit against Secret Harbor in this Court in February 2023, seeking declaratory relief as to the coverage available under the policies with respect to the claims made in the underlying lawsuits. Dkt. No. 1. Markel's complaint alleges that plaintiffs in the underlying lawsuits do not allege wrongdoing during the period or at the premises covered by any of the policies, given that the earliest policy period begins in the years after the Cypress Island school closed and the school is not listed as a covered premises in the policies. *Id.* ¶¶ 23–27. Accordingly, Markel's complaint alleges that it has no duty to defend or indemnify Secret Harbor with respect to the underlying lawsuits. *Id.*

The Court previously ruled that, as the parties agreed, claims made in the underlying lawsuits are not covered by the 2015–18 policies. Dkt. No. 38 at 7. The Court also ruled that the designated premises endorsements attached to the 2010, 2011, and 2012 policies bar any coverage available under those policies. Dkt. No. 74 at 6–8. The Court denied Markel's motion for summary judgment as to the 2013 policy, finding that coverage is available under that policy. *Id.* at 9–10. The Court noted that the coverage available under the 2014 policy had not yet been adjudicated. *Id.* at 10 n.8.

Shortly after the Court issued its most recent summary judgment order, Markel filed another motion for partial summary judgment, requesting a ruling that there is no coverage under the 2013 or 2014 excess/umbrella policies based on the same designated premises endorsements that the Court had previously ruled on with respect to the 2010–12 policies. Dkt. No. 83. Before that motion could be fully briefed, Secret Harbor filed for receivership and liquidation in Skagit County Superior Court. Dkt. No. 90-1. Secret Harbor's Receiver, Elliott Bay Asset Solutions LLC, was appointed in June 2025 and Skagit County Superior Court ordered that all proceedings against Secret Harbor be stayed. *See id*. The Court thus terminated the summary judgment motion, among other pending motions, and stayed this action until June 16, 2026. Dkt. No. 122.

After the Court lifted the stay, Markel moved for leave to amend its complaint. Dkt. No. 124. In its motion, Markel seeks to:

> (1) update its factual allegations, including the new underlying claims against Secret Harbor and its receivership to reflect developments since Secret Harbor filed for liquidation; (2) reflect the court's coverage rulings on MIC's summary judgment motions; and (3) state the unresolved coverage issues raised by the current set of claims and MIC's reservation of rights letters that have yet to be determined in this matter.

Dkt. No. 124 at 5. The proposed amendments include eliminating certain causes of action and adding others, and modifying legal theories to apply to different policies when compared with the original complaint. *See* Dkt. No. 124-2.

The Court subsequently allowed the State to intervene as a Defendant, and permitted both the Receiver and the State to file opposition briefs in response to Markel's motion for leave to amend.[1] Dkt. Nos. 129, 133. The motion for leave to amend is now ripe for resolution.

[1] The Court also granted the parties' stipulated motion to amend the case schedule, which sets the deadline for filing amended pleadings as October 2, 2026. Dkt. No. 129.

## II. ANALYSIS

### A. Legal Standards

A party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court "considers the following five factors to assess whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation modified), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). "The opposing party bears the burden to show why leave to amend should not be granted." *Robertson v. Bruckert*, 568 F. Supp. 3d 1044, 1047 (N.D. Cal. 2021).

### B. Most of the Relevant Factors Support Leave to Amend.

The Receiver opposes Markel's motion on delay, futility, and prejudice grounds, while the State opposes the motion based on prejudice alone. Dkt. Nos. 130, 135. The Court will address each disputed factor.

1. *Markel's New Coverage Theories Could Have Been Raised Earlier, but This Factor Alone Is Insufficient to Support Denying Markel's Motion.*

When considering whether an amendment would cause undue delay, courts should consider whether the moving party knew or should have known the facts and theories raised by the amendment at the time the original pleading was filed. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).

With respect to the additional and modified legal claims, these claims and legal arguments are based on policy language that has not changed since Markel filed the original complaint. What *has* changed is that from this vantage point, Markel has the benefit of Court rulings on two motions

for partial summary judgment and can now tailor its claims to those rulings.[2] Markel notes that this case has not progressed as far as in *AmerisourceBergen*, where allowing amendment would have required reopening discovery and delayed final judgment. Here, after a year-long stay and the addition of the State as an Intervenor-Defendant, the parties agreed to essentially restart the case schedule. *See* Dkt. No. 128.

It is true that permitting amendment may not significantly disrupt the proceedings in this case, but this is not the type of delay to which the Receiver objects. Instead, the Receiver emphasizes that Markel has known since the outset of this case what its policies say, and has had repeated opportunities to consider the coverage available under those policies, and yet did not seek to amend its claims to raise new coverage theories until receiving a Court ruling on the theories that it originally chose to litigate. *See* Dkt. No. 130 at 8–10. Markel does not rebut this and in fact acknowledges that it seeks to "conform its complaint to … current coverage theories." Dkt. No. 137 at 7.

Although it is undisputed that Markel *could* have raised these theories earlier, undue delay alone does not typically solely support denying leave to amend. *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973). Thus, the Court will consider the remaining factors as well.

*2. The Receiver Has Not Shown that Markel's New Claims Are Prohibited by Law and Therefore Futile.*

The Receiver argues that Markel's new coverage theories are futile because they are prohibited by law. According to the Receiver, under Washington's "mend the hold" doctrine, an insurer is estopped from raising a new ground for denying a claim that it could have raised earlier,

[2] Additional underlying lawsuits have also been filed against Secret Harbor since the drafting of the original complaint, but Markel has not explained why the existence of these new claims leads it to take different coverage positions than originally taken. It appears undisputed that Markel *could* have asserted its new coverage arguments at the outset of this case, as Markel emphasizes that the policies themselves have not changed with time. Dkt. No. 138 at 9. As the Receiver notes, the 2013 and 2014 umbrella policies have been discussed since the outset of this litigation. *See, e.g.*, Dkt. No. 131 at 176, 201, 227, 237, 265.

if the insured is prejudiced by the insurer's failure to initially raise the other ground. Dkt. No. 130 at 12 (citing *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F. Supp. 2d 1235, 1245 (W.D. Wash. 2014)). Markel contends the doctrine does not apply to this situation because it has denied no claims, but has defended under "a full and complete reservation of its rights, expressly reserving its right to supplement its coverage positions as facts developed." Dkt. No. 137 at 7.

Indeed, the Receiver has not cited a case applying the "mend the hold" doctrine or other form of estoppel to scenarios beyond the denial of a claim. There is authority suggesting that this doctrine does not apply to non-denials of coverage. *See, e.g.*, *Dentists Ins. Co. v. Yousefian*, No. C20-1076RSL, 2023 WL 4106220, at *12 (W.D. Wash. June 21, 2023). Because it is not clear at this point that Markel's new claims are obviously futile, this factor does not support denying Markel's motion. *See Equal Emp. Opportunity Comm'n v. Crew Concepts, Inc.*, No. CV 06-388-S-EJL, 2007 WL 9747512, at *2 (D. Idaho July 30, 2007) ("A motion for leave to amend will not be denied on the basis of futility unless it is facially obvious that amendment would be frivolous.").

*3. Neither the Receiver nor the State has Identified Prejudice That Would Flow From the Amendment.*

The Receiver argues that allowing Markel to shift its coverage theories now would prejudice the Receiver's ability to protect the Receivership Estate, administer claims, evaluate insurance rights, and preserve limited estate resources because Markel previously communicated that funds were available under multiple policies for settlement, and now seeks to assert a new "anti-stacking" argument that all coverage turns on whether there is coverage under the 2010 policy (because the Court has ruled that there is no coverage available under the 2010 policy due to the designated premises endorsement). *See* Dkt. No. 130 at 6–7, 10–12.

Markel contends that the Receiver describes this prejudice in the abstract, without pointing to evidence that the Receiver has been prejudiced in its ability to administer or settle claims raised in the underlying lawsuits. Dkt. No. 137 at 6.

The State characterizes the prejudice to it as the State's reliance on the original complaint—wherein Markel described a designated premises endorsement in the 2010–12 primary policies, which it reads to imply that the other policies lack such an endorsement. *See* Dkt. No. 1 ¶ 27. If Markel had acknowledged from the outset of this case that (as it states in its proposed amended complaint) the 2013 excess/umbrella policy also contains the same endorsement (suggesting that the Court's 2025 summary judgment ruling would apply to the 2013 policy and bar coverage available there), then the State suggests that it would not have devoted significant taxpayer resources in multiple rounds of mediation, attempting to settle the underlying litigation. Dkt. No. 135 at 11–12.

Markel counters, accurately, that its original complaint did not disclaim the existence of designated premises endorsements in any policies other than the 2010–12 primary policies, so it cannot be used to prevent Markel from stating truthfully that other policies *do* contain designated premises endorsements. While the interpretation offered by the Receiver and the State may be a reasonable way to read the complaint—because the original complaint highlights the existence of designated premises endorsements only as to certain policies, one would assume that the other policies lack the endorsement—neither the Receiver nor the State have explained why the Court should credit their assumptions about the contents of the policies, particularly when they have had access to all of the policies since before this litigation began. Markel's amendment does not require "undoing" any of the facts alleged in the original complaint because the original complaint was silent as to whether other policies contained a designated premises endorsement as well as the implications of the anti-stacking provisions.

Moreover, Markel repeatedly emphasized in its reservation of rights letters that it reserved the right to supplement its coverage positions, even as recently as April 2025. *See, e.g.*, Dkt. No. 131 at 367. Markel moved for summary judgment on some of the same theories it now seeks to inject into a new version of the complaint (Dkt. No. 83), meaning that the parties have been aware of most of these new coverage positions since spring 2025. That the Receiver and the State may have merits arguments against those new positions does not render the new claims obviously futile, and the Court will not address the viability of either the new claims or the merits defenses in the context of a motion for leave to amend.

Moreover, that the Receiver and the State must respond to Markel's new coverage theories does not amount to prejudice. To apply arguments previously made with respect to some policies to other policies does not amount to an entirely new defense strategy, nor does it alter the nature of the litigation. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding that where new claims in an amended complaint "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense" counsels against granting leave to amend).

Because the Court is not persuaded that the proposed amendments would be futile or would prejudice the State or the Receiver, and Markel's delay in seeking amendment is insufficient to alone justify denying leave, the Court will grant Markel's motion, consistent with this circuit's extremely liberal policy favoring amendment.

## III. CONCLUSION

For these reasons, the Court GRANTS Plaintiff's motion. Dkt. No. 124. Plaintiff shall file an amended complaint no later than October 23, 2026.

Dated this 16th day of October, 2026.

Kymberly K. Evanson
United States District Judge